# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF IOWA

In the Matter of:

Julilath Kouangvan,
Minh Kouangvan                                            Case No.  10-05009-als7

                Debtor                                      Chapter 7

United States Trustee                                     Adv. Pro. 10-30170-als

                Plaintiff

    v.

Julilath Kouangvan

                Defendant

## MEMORANDUM OF DECISION
**(date entered on docket: July 18, 2012)**

In this proceeding, the United States Trustee seeks denial of the Debtor's general discharge under 11 U.S.C. sections 727(a)(3) and (a)(5) (2010). James L. Snyder appeared on behalf of the Plaintiff ("UST" or "Plaintiff"). Julilath Kouangvan ("Debtor," "Defendant" or "Kouangvan") was represented by Ronald R. Rieper. At the conclusion of trial the matter was deemed fully submitted. Jurisdiction for these matters is found at 28 U.S.C. sections 157(b)(1) and 1334. The following findings of fact and conclusions of law are entered by the Court pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. For the reasons set forth herein, the Debtor's discharge is denied.

# FACTS

Kouangvan filed her chapter 7 bankruptcy case on October 8, 2010.[1] She is currently 43 years of age, has two children and is divorced. Prior to, and after her bankruptcy filing, she operated a sole proprietorship called Superclean which provides commercial and residential cleaning services. Her education includes a high school diploma and one year of college.

On the date of filing, Schedule F included a total of fifty-four (54) unsecured creditors whose claims were all characterized as disputed. Sixteen (16) of this total number of creditors are individuals whose claims arise from loans made to the Debtor(s)[2] many of which indicate that the amount owed is "unknown." An amendment to Schedule F was filed on November 4, 2010. This document duplicates some of the individual creditors named on the Schedule F originally filed in the case, but provides additional detail related to repayment terms and changes the "unknown" claim amounts to reflect a balance owing. No revisions were made to the disputed nature of these debts. Utilizing all of the filed schedules, total unsecured non-priority debt owed by the Debtor on the date of filing was $378,896.10. Of that amount, $198,000 is owing to individuals that are listed as creditors by virtue of personal loans made to the Debtors.

The Defendant states that these individual creditors were friends or family that agreed to assist her in meeting her living expenses by lending her money in exchange for a high rate of interest. In support of her contention, copies of standardized Promissory Notes, handwritten documents and checks were presented at trial to prove that amounts were advanced. Repayment

---

[1] The case was filed jointly with her husband, Minh Kouangvan, who is not a party in this adversary proceeding.
[2] Although the bankruptcy schedules identify these debts as being jointly owed, most of these obligations involve only the Defendant. Strangely, however, some of the handwritten documents that are executed solely by the Debtor, specifically reference her husband's social security number. Only one listed creditor, for whom the loan documents were entered into evidence, appeared to have required Defendant's husband to execute any loan document(s). See Exhibits HHH, III, JJJ.

terms in these exhibits range from demand notes with no interest to amounts requiring interest payments ranging from 12 to 20% with no reference as to how it compounds.

The Defendant called three of her individual creditors as witnesses to establish her pattern of borrowing and repayment and to lay foundation for admission of a number of her exhibits. In contrast to Kouangvan's version of events, all of these witnesses describe their transactions with the Defendant as "investments," specifically stating that she approached them to provide funds and promised a higher interest rate than could be obtained from a bank.

At issue in this case is the assertion that the Defendant failed to maintain financial records to detail her financial transactions and to explain what happened to hundreds of thousands of dollars she obtained within the four years prior to her bankruptcy filing.

## DISCUSSION

Denying a debtor's discharge under 11 U.S.C. section 727 is a harsh penalty and such a request is strictly construed against the complaining party and liberally in favor of the debtor in order to preserve the concept of a fresh start which is an essential purpose of bankruptcy relief. See Korte v. United States (In re Korte) 262 B.R. 464, 471 (B.A.P. 8th Cir. 2001) (citations omitted); Rutland v. Petersen (In re Petersen), 323 B.R. 512, 516 (Bankr. N.D. Fla. 2005). As here, complaints objecting to discharge may often assert facts that relate to claims under both 11 U.S.C. sections 727(a)(3) and 727(a)(5). Courts agree that neither of these sections require an element of intent. The Plaintiff bears the burden of proof by a preponderance of the evidence. See Barclays/Am. Bus. Credit v. Adams In re Adams, 31 F.3d 389, 393-94 (6th Cir. 1994); Conine v. Foster (In re Foster), No. 2:08-bk-75126, 2012 Bankr. LEXIS 1861, at *8 (Bankr. W.D. Ark. Apr. 20, 2012).

**I.    11 U.S.C. section 727(a)(3)**

    **A.    Statutory Language**

        (a) The court shall grant the debtor a discharge, unless
…
        (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

    **B.    Application of Exception**

The Bankruptcy Court in the District of Massachusetts provides a succinct description of the burdens that must be met under 727(a)(3):

> The initial burden is on the party objecting to discharge to prove two things: (i) that the debtor "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information"; and (ii) that the recorded information was information "from which the debtor's financial condition or business transactions might be ascertained." The plaintiff need not establish specific intent of any kind. If the party objecting to discharge proves these two requirements, the burden then shifts to the debtor to prove that "such act or failure to act was justified under all of the circumstances of the case."

Lassman v. Keefe (In re Keefe), 380 B.R. 116, 120 (Bankr. D. Mass. 2007) (citing Campana v. Pilavis (In re Pilavis), 244 B.R. 173, 176 (B.A.P. 1st Cir. 2000)). This court went on to state that an act is "justified" for 727(a)(3) purposes "if it is right or appropriate in the circumstances." Id. at 121.

As a prerequisite to discharge, a debtor has a duty to keep and produce records explaining the disposition of assets. This duty is solely the debtor's and may not be delegated. See In re Horton, 621 F.2d 968, 971-71 (9th Cir. 1980) (holding that debtor had duty to maintain his own records and that few cases remove this burden from the debtor); In re Escobar, 53 B.R. 382, 385

(Bankr. S.D. Fla. 1985) (holding that debtor had non-delegable duty to keep records of his business transactions); see also 9D Am. Jur. 2d Bankruptcy § 3509 (2012).

The Plaintiff met its burden to prove that the Defendant's records are inadequate by showing that she failed to provide any credit card account records, dealt mostly in cash, did not keep track of how she disposed of the cash, and initiated many loans for large amounts of money while only haphazardly and incompletely keeping track of these transactions.  The burden now shifts to the Defendant to show that her meager record keeping was justified under the circumstances.

"Although the Bankruptcy Code does not require an impeccable system of bookkeeping, the records must sufficiently identify the transactions [so] that intelligent inquiry can be made of them." Grisham Farm Prods., Inc. v. Keller (In re Keller), 322 B.R. 127, 132 (Bankr. E.D. Ark. 2005) (citations omitted).  Even if poorly organized, there must be a reasonably sufficient basis upon which to ascertain the debtor's financial condition. See Floret, L.L.C. v. Sendecky (In re Sendecky), 283 B.R. 760, 764 (B.A.P. 8th Cir. 2002); see also id.; Riley v. Riley (In re Riley), 305 B.R. 873, 883 (Bankr. W.D. Mo. 2004);  Jarvis v. Minesal (In re Minesal), 81 B.R. 477 (Bankr.E.D.Wis.1988); Blockman v. Becker (In re Becker), 74 B.R. 233 (Bankr.E.D.Tenn.1987). Various factors may be utilized to determine whether the records are inadequate for purposes of applying § 727(a)(3) and include:  the debtor's education, the debtor's business experience, the sophistication of the debtor, the volume of the debtor's business, the complexity of the debtor's business, the debtor's personal financial structure, and any other circumstances that should be considered in the interest of justice. See First State Bank v. Beshears (In re Beshears), 196 B.R. 468, 474 (Bankr. E.D. Ark. 1996); see also Womble v. Pher Partners (In re Womble), 108 Fed.

Appx. 993, 996, 2004 WL 2185744 (5th Cir. 2004); Milam v. Wilson (In re Wilson), 33 B.R. 689, 692 (Bankr. M.D. Ga. 1983).

  The Defendant offers numerous exhibits to explain her transactions with a handful of her family and friends. No documents were supplied as to any of the other individuals identified as creditors in her bankruptcy proceeding. Due to the absence of these items from the proffered exhibits, it is presumed such records do not exist. The majority of the Defendant's records are not documents that she personally maintained. Although it would not be unusual for records to become misplaced, destroyed or unavailable, Kouangvan states that she has no records because her lenders demanded that they retain the original documents, and she was not provided a copy. None of the lenders called as witnesses were questioned regarding any requirement that the original loan document be retained or that a copy was not, or could not be, provided.

  Loan proceeds were routinely provided to Kouangvan in the form of cash. However, even when the Defendant did receive a check, she did not deposit these funds into her bank account. Instead, she would go to the bank upon which the lender's check was drawn and obtain cash. This cash was then used for loan repayments, leaving no trail as to receipt or payment. Her basis for this conduct was that she did not want to wait, or could not wait, for the check to clear under normal banking practices because it would delay her ability to immediately access the funds. This procedure, she claims, was justified due to her lenders' demand or desire to receive cash payments. Nothing in the record supports the necessity for this course of conduct. When questioned about how she would account for her use of cash in these specific types of transactions, Kouangvan stated that she had not considered that issue. According to the records that have been submitted, at any given time, the Defendant would have had cash in her possession in the thousands, if not tens of thousands of dollars. It is difficult to believe that no

thought was given to monitoring the loans obtained and repayments made. A personal journal is the only record actually maintained and preserved by the Defendant. This document contains a wide array of content, the least of which can be interpreted in any fashion as being related to her financial transactions. Upon independent review, this document is incomprehensible[3] and does not constitute reliable information.

The Defendant's records related to her loan transactions are insufficient. Receipts and repayments are noted on handwritten documents – some of which contained notations made in Laotian. A notation of "Done" apparently indicates a note was repaid, but there is no method to verify the loan was actually satisfied. Defendant admits that she did not always receive the original promissory note back from the creditor. Defendant provided no records which would indicate the outstanding balance on any given transaction, or identify how payments were applied to any specific loan among the many that she owed. According to her testimony, the Debtor describes her obligations as disputed on her bankruptcy filing because the claim amount was a "moving target" due to accruing interest that could not be calculated with any certainty. This position is not persuasive for the following reasons. First, a notation that a creditor's claim is disputed generally requires more than a mere discrepancy in the amount owed due to accumulating interest. Any such variance due to interest calculation would be minimal because interest ceases to accrue as of the bankruptcy filing date. Second, a debtor's statement of the amount owed on a claim in a bankruptcy filing is not binding on the creditor. Third, it is the creditor's duty to determine the amount owed for purposes of filing a claim or discharging its debt for tax purposes. A more plausible explanation for Debtor's "dispute" of all her unsecured debts is her inability to determine the amount of her outstanding obligations due to her lack of records.

---

[3] Defendant's Exhibits BBB and CCC admitted into evidence.

Asserting that the transactions in question are not business related, the Defendant contends that maintaining records related to personal finances is neither required nor ordinary for most individuals. While this may be true,[4] the record belies the conclusion that the transactions at issue were solely personal in nature. The three witnesses called by the Defendant to testify at trial consistently stated that the money provided to Kouangvan was in the nature of an investment, and that she offered a high interest rate to induce their participation. A careful review of the record supports the witnesses' version of events. Exhibits submitted by the Defendant contain additional text that indicates the borrowed funds were actually being supplied to third parties and not being utilized for living expenses.[5]

At best, the Defendant's records contain a hodge podge of information that does not meet the requirements established for maintaining records, and the lack of records is not justified by the circumstances. Based upon the foregoing the Debtor's discharge is denied pursuant to 11 U.S.C. section 727(a)(3) (2010).

**II.    11 U.S.C. section 727(a)(5)**

  **A.    Statutory Language**

(a) The court shall grant the debtor a discharge, unless
…
> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

---

[4] See Riley v. Riley (In re Riley), 305 B.R. 873, 883 (Bankr. W.D. Mo. 2004); In re Hogard, 43 B.R. 590 (Bankr. D. Minn. 1984) (citing 4 Collier on Bankruptcy, 727-41 (15th ed. 1984)).

[5] Notes in Defendant's handwriting as follows: Defendant's Exhibit LL p. 25 "We really appreciate your business"; p. 27 "I really appreciate it Please help us till at least by the end of Feb. We really busy [sic]. I'm going to try to hang on to it so you make money"; p. 34 Can you ask your friend for Tuesday night $6200.00 and $6400.00." p. 38 "I just a call [sic] 2 people want on Tuesday night or Wed morning can you ask someone for us $5900 $6,200. Thank you! Thank you!" and Defendant's Exhibit PP p. 6 "I really like the 2 weeks. I think is [sic] short and nice. Please try to let you friends know that is [sic] ok to do what we are doing. If they can try to keep the money on hands [sic]. I really try to get the money for you as soon as we can. Thank you for being s [sic] patience [sic] and we appreciate your business" (emphasis original); p.7 "Please check with your other friends see if she can help on Thursday morning . . . I have another group (illegible). They need for 2 weeks $5800 and $6200."

### B.     Application of Exception

To be successful in a claim under this provision, a Plaintiff must first "introduce more than merely an allegation that the debtor has failed to explain losses." See 6-727 Collier on Bankruptcy ¶ 727.08 (2010). "Once a creditor has established that debtor owned substantial and identifiable assets, a debtor must satisfactorily explain loss of such assets. The explanation should be sufficient that the Court does not have to speculate as to what happened to the assets or speculate as to the veracity of the explanation." See First State Bank v. Beshears (In re Beshears), 196 B.R. 468, 472-73 (Bankr. E.D. Ark. 1996). "[A]n action under § 727(a)(5) focuses entirely on the plausibility of the debtor's explanation for the loss or deficiency." Krohn v. Cromer (In re Cromer), 214 B.R. 86. 95 (Bankr. E.D.N.Y. 1997). The determination of whether a debtor's explanation is satisfactory rests within the discretion of the court. See Gray v. Gray (In re Gray), 295 B.R. 338, 345 (Bankr. W.D. Mo. 2003). The Plaintiff met its burden by showing that the Defendant had borrowed substantial sums of money before filing bankruptcy. The Defendant readily admits that she did not have any of the loan proceeds at the time of her bankruptcy which is corroborated by her filed schedules. The Defendant initially contends that she borrowed funds to meet her family's personal living expenses. She then elaborates by stating that she was forced to borrow more money to meet mounting interest payments for multiple loans and a pattern of "robbing Peter to pay Paul" became inevitable. The Defendant's explanations are obscure and unconvincing. First, interest was paid to some lenders at a rate higher than indicated in the agreements. According to the demand notes, the interest was to be calculated per annum, but payments were made based upon a monthly compounding rate. Second, the high interest rate was proposed by the Defendant. Third, the loans were designed to

be of short duration.  No reasoning is provided for this practice although the Defendant had no apparent ability to make repayment of principle or interest under the time frame she established.

It is impossible to determine how the funds were received, spent or applied to repayments.  In many instances, substantial loans were requested, and apparently received by the Defendant over the course of a few days.  No explanation is provided as to the disposition of the original funds obtained to meet living expenses or the continued need for large sums to meet ongoing living expenses.  In spite of the sums borrowed, at the time of the bankruptcy filing, the Debtor's house was in foreclosure, car loans were in default and outstanding credit card debt existed.

When a debtor offers no more than a vague explanation of how the money was spent, courts have denied the discharge under 727(a)(5).  See, e.g., Kaler v. Schrader (In re Schrader), No. 05-32516 Adversary No. 06-7028, 2006 Bankr. LEXIS 4037, at *23 (Bankr. D. N.D. Aug. 11, 2006) (holding that defendant's vague explanation that "he spent the money on living expenses and alcohol" was not a satisfactory explanation).  The Defendant's explanations require the court to engage in speculation and are not corroborated by any records which provide an understanding of the dissipation of substantial sums of money prior to her bankruptcy filing.  See PNC Bank v. Buzzelli (In re Buzzelli), 246 B.R. 75, 117 (Bankr. W.D. Penn. 2000) ("explanations consisting of mere generalities and founded upon nothing by way of verification or affirmation in books, records or otherwise is not satisfactory").

Dealing in cash, combined with a failure to maintain adequate records to document the disposition of substantial funds, is unreasonable under the circumstances of this case, and therefore, Debtor's explanation is not sufficient to explain a loss of assets. McDonough v. Erdman, 96 B.R. 978 (Bankr. N.D. 1988) (citing Chalik v. Moorefield (In re Chalik), 748 F.2d

616, 620 (11th Cir. 1984) (holding that the "failure to offer any documentary evidence to corroborate testimony as to the loss or disposition of assets is regarded as sufficient to deny a discharge under section 727(a)(5)").  The Defendant's discharge is denied pursuant to 11 U.S.C. section 723(a)(5).

    For the reasons stated it is hereby ORDERED:

1. Defendant's discharge is denied based upon 11 U.S.C. section 727(a)(3) and 727(a)(5) and judgment shall enter accordingly.

2. The parties shall bear their own costs.


                                       /s/ Anita L. Shodeen
                                       Anita L. Shodeen
                                       U.S. Bankruptcy Judge


Parties receiving this Memorandum of Decision from the Clerk of Court:
Electronic Filers in this Adversary Proceeding